People of the State of Illinois ex rel. John F. Bolton, Jr., Director of Insurance of the State of Illinois, Plaintiff-Appellee, v. Progressive General Insurance Company, an Illinois Corporation, Defendant-Appellant.

Gen. No. 52,267.

First District, Second Division.

July 21, 1967.

Thomas P. Sullivan, Robert E. Pfaff, Hugh M. King and George B. Collins, of Chicago (Raymond, Mayer, Jenner & Block, of counsel), for appellant.

William G. Clark, Attorney General, of Springfield and Lee A. Freeman and Jerome H. Torshen, Special Assist-

ant Attorneys General, of Chicago (Law Offices of Jerome H. Torshen, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

This is an interlocutory appeal from an order of the Circuit Court of Cook County directing the rehabilitation of the defendant Progressive General Insurance Company (hereafter referred to as Progressive). This order was entered first on the 19th day of May 1967 and was reentered as an amended order on the 22nd day of May 1967. The findings upon which they were based are identical in both the original and the amended order. The Director of Insurance was ordered to take possession of the property, business and affairs of Progressive, to proceed to conduct the business of Progressive and to remove the causes which necessitated the proceedings. The basic issue on this appeal is whether the chancellor was justified, on the basis of the record before him, in taking over the business and assets of Progressive, and vesting them in the Director of Insurance.

The present action began in October, 1965. Extensive hearings were held before the master in chancery and the trial court. It was found that Progressive and its president, Charles Hoffman, Jr. had committed several serious violations of the Illinois Insurance Code. Some of the more serious violations are as follows: (1) Loans in the aggregate amount of $812,000 were made to Hoffman, personally in violation of Insurance Code, section 124.2; (2) Immediately prior to the issuance of quarterly reports by Progressive, Hoffman secured bank loans, which aggregated close to $1,000,000 executed by Progressive Agency and secured by all of the uncollected premiums due to Progressive on policies outstanding, in violation of section 505 of the Insurance Code; (3) Premiums were transmitted in bulk instead of being identified to individual policies in violation of Rule 9.08 of the

Department of Insurance; and (4) The defendant operated under an exclusive agency agreement without ever submitting the agreement to the Director of Insurance for approval as required by section 141 of the Insurance Code, all as shown in the findings in the original and the amended order.

During the pendency of these proceedings, Charles Hoffman, Jr., Progressive's president, was indicted, tried and convicted in the United States District Court on charges arising out of his association with the present defendant and the Mutual Insurance Exchange over which he had complete control. Upon the conviction of Hoffman, the Director of Insurance moved for the appointment of a rehabilitator and for other relief. Following the taking of evidence the chancellor found that the defendant was operating without a surety bond as required by Rule 9.04, supra; that each of the newly elected officers and directors were long-standing associates of Charles Hoffman, Jr. and that Charles Hoffman, Jr. retained ownership and control over Progressive. Based on these findings the chancellor issued the order which is the subject of this appeal.

■ The insurance industry is one which affects a great many people. For this reason the courts have held that the insurance business is one which effects the public interest and is subject to the supervision and control of the state. People ex rel. Benefit Ass'n v. Miner, 387 Ill 393, 56 NE2d 353; People ex rel. American Bankers Ins. Co. v. Palmer, 363 Ill 499, 2 NE2d 728. The sections of the Insurance Code under which the Director proceeded in this case reflect the concern of the State of Illinois in this area. Chapter 73, section 800 is as follows:

"Sec. 800. Grounds for rehabilitation and liquidation of domestic company
"Whenever any domestic company
"(a) is insolvent; or

429

"(b) has refused to submit its books, papers, accounts, records or affairs to the reasonable inspection or examination of the Director or his actuaries, supervisors, deputies, or examiners; or

"(c) has neglected or refused to observe an order of the Director to make good within the time prescribed by law any deficiency, whenever its capital, if a stock company, or its required surplus, if a company other than stock, shall have become impaired; or

"(d) has, by articles of consolidation, contract of reinsurance or otherwise, transferred or attempted to transfer its entire property or business not in conformity with this Code, or entered into any transaction the effect of which is to merge substantially its entire property or business in any other company without having first obtained the written approval of the Director pursuant to the provisions of this Code; or

"(e) is found to be in such condition that its further transaction of business would be hazardous to its policyholders, or to its creditors, or to the public; or

"(f) has violated its charter or any law of this State or has exceeded or is exceeding its corporate powers; or

"(g) has an officer who has refused upon reasonable demand to be examined under oath touching its affairs; or

"(h) is found to be in such condition that it could not meet the requirements for organization and authorization as required by law, except as to the amount of the surplus required of a stock company in section 13 (Section 625 of this chapter), and except as to the amount of the surplus required of a mutual company in excess of the minimum surplus required by this Code to be maintained; or

"(i) has ceased for the period of one year to transact insurance business; or

"(j) has commenced, or has attempted to commence, any voluntary liquidation or dissolution proceeding, or any proceeding to procure the appointment of a receiver, liquidator, rehabilitator, sequestrator, or a similar officer for itself; or

"(k) is a party, whether plaintiff or defendant in any proceeding in which an application is made for the appointment of a receiver, custodian, liquidator, rehabilitator, sequestrator, or similar officer for such company or its property, or a receiver, custodian, liquidator, rehabilitator, sequestrator or similar officer, for such company or its property is appointed by any court, or such appointment is imminent; or

"(l) consents by a majority of its directors, stockholders or members; or

"(m) has not organized and obtained a certificate authorizing it to commence the transaction of its business within the period of time prescribed by the sections of this Code under which it is or proposes to be organized; or

"(n) has refused or neglected to pay any valid final judgment within 30 days after the rendition thereof, then the Director shall report any such case to the Attorney General of this State whose duty it shall be to apply forthwith by complaint on relation of the Director in the name of the People of the State of Illinois, as plaintiff, to the Circuit Court or Superior Court of the county in which such company has, or last had its principal office, for an order to rehabilitate or liquidate the defendant company as provided in this article, and for such other relief as the nature of the case and the interests of its policyholders, creditors, members, stockholders or the public may require. In lieu of the county where such company has or last had its principal office, such ap-

plication may be made to the Circuit Court of Cook County or the Circuit Court of Sangamon County in case where the complaint is based on the facts set forth in one or more of subsections (i), (l) or (m) of this section. 1937, June 29, Laws 1937, p 696, Sec 188; 1959, July 17, Laws 1959, p 1422, Sec 1; 1963, May 13, Laws 1963, p 932, Sec 1."

For present purposes the relevant sections are (e), (f) and (h). It should be noted that defendant's contention that rehabilitation is appropriate only in situations where there is financial irregularity is not supported by any reading of the above provisions.

The Director of Insurance also relies on chapter 73, section 767.4(1), which is as follows:

"(1) The Director shall not approve any declaration of organization or articles of incorporation or issue a certificate of authority to any company until he has found that (a) the company has submitted a sound plan of operation, and (b) the general character and experience of the incorporators, directors and proposed officers is such as to assure reasonable promise of a successful operation, based on the fact that such persons are of known good character and that there is no good reason to believe that they are affiliated, directly or indirectly, through ownership, control, management, reinsurance transactions or other insurance or business relations with any person or persons known to have been involved in the improper manipulation of assets, accounts or reinsurance."

It is the contention of the defendant that the chancellor erred in issuing his order for the reason that the order reverses the status quo and is not required or supported by the evidence. We disagree.

■ The status quo to which the defendant would have the court allow it to return is that of an outrageous and continuing history of callous disregard for the rules and regulations of the Department of Insurance. We have already noted that rehabilitation is not limited to instances of financial irregularities. It is also clear that chapter 73, section 767.4 provides a basis for the action of the chancellor. The defendant argues that the standards therein apply only to officers elected at the time of organization. Sound public policy and the clear legislative intention to carry out that policy do not support the defendant's position. To so limit the meaning of this section would place a restriction on the section which the general assembly did not intend. In short, the legislative mandate is extremely clear.

The defendant claims that a fidelity bond has been issued, thus making the issue whether the action of the chancellor was appropriate by reason of the criminal conviction of Charles Hoffman, Jr. There was evidence, however, that the fidelity bond was issued four days after the order of rehabilitation was entered and that it was directly connected with the future operation of the company under the Director of Insurance and the chancellor. The bond was only issued after the bonding company was of the opinion that the defendant would be operated under the direction and supervision of the Department of Insurance. Whether the bond was issued before or after the chancellor's order is of no consequence.

■ The long series of violations which we have set out elsewhere, the conviction of the president of the defendant of crimes related to his business, and the appointment of officers who were more than associates but who had entered into all the activities complained of and who were named as directors with full accord and belief in their wisdom and integrity, provides more than ample basis for the chancellor's action in this case.

The chancellor found that "sufficient cause exists as of this date (May 19, 1967) for the rehabilitation of Progressive General Insurance Company" after hearing evidence and extensive arguments, and we agree. We are also satisfied that the procedure set forth in section 155.-04 was followed. It provides that "(1) The Director shall not approve any declaration of organization . . . until he has found that . . . the general character and experience of the incorporators, directors and proposed officers is such as to assure reasonable promise of a successful operation, based on the fact that such persons are of known good character and that there is no good reason to believe that they are affiliated, directly or indirectly, through ownership, . . . or other insurance or business relations with any person or persons known to have been involved in the improper manipulation of assets, accounts or reinsurance."

■ Progressive also argues that Hoffman has offered to place all of the stock of the company into a voting trust to be administered by an independent corporate trustee. This action was taken only after the chancellor had declared that a voting trust would be unsatisfactory and the chancellor rejected this offer. We find no abuse.

For the above reasons the order of the Circuit Court entered May 19, 1967, and reentered as an amended order of May 22, 1967, is affirmed. This order of course is only interlocutory and operative only pending the final hearing on the merits.

Order affirmed.

LYONS, P. J. and BURMAN, J., concur.