**Katherine M. ECKENRODE, Plaintiff-Appellant,**

v.

**LIFE OF AMERICA INSURANCE COMPANY, a corporation, Defendant-Appellee.**

No. 71-1103.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 14, 1972.

Decided Aug. 3, 1972.

**2**

Louis G. Davidson, Keith L. Davidson, Chicago, Ill., for plaintiff-appellant.

Henry A. Waller, Paul Bernstein, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, KILEY, Circuit Judge, and GRANT, District Judge.[1]

KILEY, Circuit Judge.

Plaintiff, a resident of Pennsylvania, filed this three count diversity complaint to recover damages for severe emotional injury suffered as a result of the deliberate refusal of Life of America Insurance Company (Insurer), of Chicago, to pay her the proceeds of Insurer's policy covering the life of her husband. The district court dismissed the suit. Plaintiff has appealed. We reverse.

In Count I plaintiff sought recovery of the face amount of the policy. In Count II she sought compensatory damage for Insurer's "outrageous conduct" in refusing to pay her the policy proceeds when its duty was clear and when it knew of plaintiff's and her family's financial distress. In Count III she sought compensatory and punitive damages 1) because Insurer allegedly defrauded decedent into the insurance contract by its promise of payment of benefits immediately upon proof of the insured's death from "accidental causes," while at the time its practice was not to pay meritorious claims; and 2) because Insurer allegedly sought by "economic coercion" to compel plaintiff—so increasingly financially distressed—to accept less than the face value of the policy or be forced to sue for payment of the proceeds.

The district court dismissed Counts II and III as stating no claim on which relief could be granted, and then dismissed "without prejudice" Count I. After the complaint was dismissed plaintiff filed an action in the Circuit Court of Cook County based on Count I to recover the face amount of the policy and attorney's fees under Ch. 73, § 767, Ill.Rev.Stats. That case was settled. Only Counts II and III, therefore, are before us on this appeal.

## I.

Taking the allegations, properly pleaded in Counts II and III, as true, the following facts are stated: Defendant's life insurance policy covering plaintiff's husband issued September 22, 1967. Under the policy Insurer agreed to pay plaintiff $5,000 immediately upon due proof of death from "accidental causes." On December 17, 1967, insured was an accidental victim of a homicide. Plaintiff met all conditions of the policy and repeatedly demanded payment, but Insurer refused to pay. Decedent left plaintiff with several children, but no property of value. She had no money, none even for the funeral expenses. Denied payment by Insurer, she was required to borrow money to support her family, while her financial condition worsened. The family was required to live with, and accept charity from, relatives.

Further: Insurer knew or should have known of the death of decedent from accidental causes and of plaintiff's dire need of the policy proceeds. Yet Insurer repeatedly and deliberately refused her demands for payment, and as a proximate result she was caused to suffer "severe distress and disturbance of [her] mental tranquility." Instead of paying her the proceeds of the policy, and being fully aware of the accidental cause of decedent's death and of plaintiff's financial distress, Insurer breached the policy promise to pay immediately upon proof of death. Insurer, knowing full well that plaintiff needed the proceeds of the policy to provide necessaries for her children, applied "economic coercion" in refusing to make payment on the policy, and in "inviting" plaintiff to "compromise" her claim by

---

1. Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

implying it (Insurer) had a valid defense to the claim.[2]

## II.

The issue before us with respect to Counts II and III is whether plaintiff—beneficiary of her husband's life insurance policy—may on the foregoing "facts" recover damages for severe mental distress allegedly suffered as a result of Insurer's conduct. Illinois law controls our decision, and, in anticipation[3] that the Illinois Supreme Court would hold as we do, we decide the issue in favor of plaintiff.

We have no doubt, in view of Knierim v. Izzo, 22 Ill.2d 73, 174 N.E.2d 157 (1961), that the Illinois Supreme Court would sustain plaintiff's complaint against Insurer's motion to dismiss.

In Knierim, plaintiff filed a wrongful death action alleging, inter alia, that defendant Izzo threatened her with the murder of her husband, carried out the threat, and thereby proximately caused her severe emotional distress. The trial court dismissed her complaint, but the Illinois Supreme Court reversed and held that plaintiff had stated a cause of action for an intentional causing of severe emotional distress by Izzo's "outrageous conduct."

The court recognized the "new tort" of intentional infliction of severe emotional distress, following similar recognition by an "increasing number of courts," and cited several state decisions. 174 N.E.2d at 163. The court rejected reasons given by other courts not recognizing the "new tort." As to the reason that mental disturbance is incapable of financial measurement, the court pointed out that "pain and suffering" and "mental suffering" are elements of damage, respectively, in personal injury and malicious prosecution cases. 174 N.E.2d at 163. As to the reason that mental consequences are too evanescent for the law to deal with, the court noted that psychosomatic medicine had learned much in the past "thirty years" about the bodily effects of man's emotions, and that symptoms produced by "stronger emotions" are now visible to the professional eye. 174 N.E.2d at 164. As to the reason that recognizing the "new tort" would lead to frivolous claims, the court observed that triers of fact from their own experiences would be able to draw a line between "slight hurts" and "outrageous conduct." Id. And finally, as to the reason that mental consequences vary greatly with the individual so as to pose difficulties too great for the law, the court adopted an objective standard against which emotional distress could be measured. The court thought that the standard of "severe emotional distress to a person of ordinary sensibilities, in the absence of special knowledge or notice" would be a sufficient limit for excluding "mere vulgarities * * * as meaningless abusive expressions." 174 N.E.2d at 165. The court noted that the "reasonable man" is well known to triers of fact who are also well acquainted with "the man of ordinary sensibilities."

The court added a cautionary note, expressing confidence that Illinois trial judges would not permit litigation to introduce "trivialities and mere bad manners" under the cloak of the "new tort." The court concluded—with implications from the famous Warren-Brandeis article on the "new tort" or privacy—that peace of mind is a personal interest of sufficient importance to receive the law's protection against intentional invasion by "outrageous conduct," and that the allegations in Mrs. Knierim's complaint stated a cause of action.

In Knierim the court, inter alia, relied upon State Rubbish Collectors Associa-

---

2. Attached to the complaint is a copy of Insurer's letter of January 12, 1968. The letter suggests that in view of a police investigation not likely to be completed until the "very distant future," plaintiff might like to suggest an offer to "settle" rather than wait for the police report.

3. See 1A Moore, Federal Practice ¶ 0.309 [2] at 3326 et seq. 2d Ed. (1965).

tion v. Siliznoff, 38 Cal.2d 330, 240 P.2d 282 (1952), and Restatement, Torts § 46 (1948 Supp.). In *Siliznoff* the California Supreme Court, in an opinion by Justice Roger Traynor, recognized the "new tort" for the first time and held that Siliznoff could recover from the cross-defendant Rubbish Collectors Association for mental distress caused by the Association's severe threats to beat him up, destroy his truck and put him out of business unless Siliznoff offered to pay over certain proceeds to the Association. Later, the California Supreme Court *en banc* affirmed a trial court judgment against an insurance company, including $25,000 for mental suffering caused by the insurance company's earlier unreasonable refusal to accept a settlement within the limits of the liability policy. Crisci v. Security Ins. Co. of New Haven, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1970). There Mrs. Crisci's mental distress claim was in addition to her loss of property caused by the insurance company's failure to settle. The court thought that where there were substantial damages apart from the mental distress, the danger of fictitious claims was reduced. Subsequently in Fletcher v. Western National Life Ins. Co., 10 Cal.App.3d 376, 89 Cal.Rptr. 78 (1970), an appellate court relying upon *Siliznoff* and *Crisci*, held that the defendant insurance company's threatened and actual bad faith refusals to make payments under the disability policy were essentially tortious in nature and could legally be the basis for an action against the company for intentional infliction of emotional distress. The decision rested on the finding that the refusals were maliciously employed by the company in concert with false and threatening communications directed to the badly injured plaintiff-insured for the purpose of causing him to surrender his policy or disadvantageously settle a nonexistent dispute. 89 Cal.Rptr. at 93. The court found sufficient evidence showing emotional distress of the "requisite severity" (*i. e.*, outrageousness),

and thus affirmed the trial court's denial of judgment N.O.V.

We think that the California court in *Fletcher, supra,* set out correctly the elements of a prima facie case for the tort of "intentional infliction of severe emotional distress":

(1) Outrageous conduct by the defendant;

(2) The defendant's intention of causing, or reckless disregard of the probability of causing emotional distress;

(3) The plaintiff's suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

See *Knierim, supra*; Restatement 2d Torts, § 46(1); Prosser, Torts § 11 (3d Ed.1964).

It is our view that were this case before the Illinois Supreme ·Court, that court would find the foregoing elements substantially correct; and that plaintiff here has sufficiently pleaded the elements.

It is recognized that the outrageous character of a person's conduct may arise from an abuse by that person of a position which gives him power to affect the interests of another; and that in this sense extreme "bullying tactics" and other "high pressure" methods of insurance adjusters seeking to force compromises or settlements may constitute outrageous conduct. Restatement 2d Torts § 46 Comment (e); Prosser, Torts § 11 at 49–50. It is also recognized that the extreme character of a person's conduct may arise from that person's knowledge that the other is peculiarly susceptible to emotional distress by reason of some physical or mental condition or peculiarity. Restatement 2d Torts § 46 Comment (f); Prosser, Torts § 11. See Keenan, The Insurer and the Tort of the Intentional Infliction of Mental Distress, Insurance Counsel Journal 335 (1972).

Here Insurer's alleged bad faith refusal to make payment on the policy, coupled with its deliberate use of "eco-

nomic coercion" (*i.e.*, by delaying and refusing payment it increased plaintiff's financial distress thereby coercing her to compromise and settle) to force a settlement, clearly rises to the level of "outrageous conduct" to a person of "ordinary sensibilities."

Furthermore, it is common knowledge that one of the most frequent considerations in procuring life insurance is to ensure the continued economic and mental welfare of the beneficiaries upon the death of the insured. See *Crisci*, 66 Cal.2d 425, 58 Cal.Rptr. at 19, 426 P.2d at 179. The very risks insured against presuppose that upon the death of the insured the beneficiary might be in difficult circumstances and thus particularly susceptible and vulnerable to high pressure tactics by an economically powerful entity. *Fletcher*, 89 Cal.Rptr. at 95. In the case before us Insurer's alleged high pressure methods (economic coercion) were aimed at the very thing insured against, and we think that the insurance company was on notice that plaintiff would be particularly vulnerable to mental distress by reason of her financial plight.

In deciding as we do, we note that insurance business affects a great many people, is subject to substantial governmental regulation and is stamped with a public interest. Memorial Gardens Ass'n, Inc. v. Smith, 16 Ill.2d 116, 156 N.E.2d 587 (1959); People ex rel. Bolton v. Progressive Gen. Ins. Co., 85 Ill.App.2d 427, 229 N.E.2d 350 (1967); *Crisci, supra; Fletcher, supra.* We also note that insurance contracts[4] are subject to the same implied conditions of good faith and fair dealing as are other contracts. Appleman, Insurance § 1612

(1967); I.L.P., Insurance §§ 101, 141 et seq. (1956).

It is true that settlement tactics may be privileged under circumstances where an insurer has done no more than insist upon his legal rights in a permissible way. But we do not think that a refusal to make payments based on a bad faith insistence on a non-existent defense is privileged conduct against the complaint here.

### III.

We hold, however, that plaintiff may not recover punitive damages[5] because in our view Knierim v. Izzo, *supra*, will not support an anticipation that the Illinois Supreme Court would sustain a judgment allowing punitive damages.

In *Knierim* the Illinois Supreme Court stated:

> We believe, nevertheless, that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive.

The court then went on to hold effectually that the trial court did not err in dismissing the "portions of Counts III and IV that related to . . . punitive damages."[6] We fail to see, in the face of that language how we can anticipate that punitive damages are permissible in an action under the "new tort" in Illinois.

For the reasons given, the judgment of the district court dismissing Counts II and III of plaintiff's complaint is hereby reversed.

---

4. We think it is clear that an action of the type involved here sounds both in contract and in tort.

5. Defendant argues that Ill.Rev.Stat. Ch. 73 § 767, Attorney Fees, limits plaintiff's recovery to $1,000. However, defendant cites no decision for its position.

And we think that the statute by its terms is limited to attorney fees and does not militate against our decision.

6. In this respect the Illinois court stopped short of the California courts which approve punitive damages in the "new tort." 89 Cal.Rptr. at 95.