**Frank SERPICO, Plaintiff,**

v.

**MENARD, INC., Defendant.**

**No. 95 C 3510.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 17, 1996.

---

Sharon Finegan Patterson, Raleigh & Cahill, P.C., Chicago, IL, for Frank Serpico.

John J. Walsh, III, James Avery La Barge, Pretzel & Stouffer, Chtd., Chicago, IL, James Bartlett, Esther Joy Schwartz, Gregory R. Spelson, Stellato & Schwartz, Ltd., Chicago, IL, for Menard, Inc.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

The moral of this case is never to put someone else's nuts in your pocket. Plaintiff's amended complaint concerns an incident in which defendant accused plaintiff of shoplifting a machine nut from one of defendant's Menards stores. In his amended complaint plaintiff alleges that defendant: falsely arrested/imprisoned him (Count I); intentionally inflicted emotional distress upon him (Count II); and violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count III). After filing an answer and affirmative defenses to the amended complaint, defendant filed a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

### Facts [1]

On December 12, 1994, plaintiff, who is seventy years old, went to one of defendant's stores located at Hall Plaza in Chicago to pick up supplies that he needed to fix a broken sprinkler system for his employer. The first item plaintiff looked for and located was a nut. After picking out a nut, which had a value of less than 70 cents, plaintiff asked several of defendant's employees where he could locate pipe wrap.

During his search for the pipe wrap plaintiff put the "solitary, little nut" in his pocket so that he would not drop the nut or misplace it while he searched for the pipe wrap. Plaintiff found and picked up some pipe wrap, went to a cash register and paid for the pipe wrap, but forgot to remove or pay for the nut he had put in his pocket. Plaintiff then proceeded to exit the store without paying for the nut. After plaintiff exited, one of defendant's representatives stopped plaintiff and forced him to accompany the representative to a closed room within the store. In the room, defendant's representative demanded that plaintiff empty his pockets. Plaintiff proceeded to remove the nut, money, and a cash register receipt for the pipe wrap.

Defendant refused to listen to plaintiff's explanation that he had merely forgotten to pay for the nut. Defendant's representative then took plaintiff's picture and displayed it on a bulletin board along with numerous other pictures labeled as criminals who had stolen merchandise, and called the Chicago Police Department to have an officer come to defendant's store to file a criminal complaint against plaintiff for shoplifting. The police officer tried to dissuade defendant's store manager from filing a complaint against plaintiff, telling the manager that plaintiff did not intend to steal the nut and that plaintiff had made an honest mistake. Nonetheless, the manager insisted on filing a criminal complaint, and the police took plaintiff to the station where he was fingerprinted.

As a result of defendant's insistence that plaintiff be prosecuted for theft of the 70 cent nut, plaintiff was forced to retain a lawyer. The lawyer called defendant's store manager who told the attorney that defendant intended to prosecute plaintiff for shoplifting. When plaintiff's employer learned what had

---

1. The facts are taken from the allegations in the amended complaint.

happened, one of its representatives called defendant's store manager, vouched for plaintiff's integrity, stated that plaintiff had not intended to steal the item, and explained that the employer always reimbursed plaintiff for all purchases plaintiff made for repairs for the employer (thus negating any motive or intent by plaintiff to steal the nut).

After further calls and investigation, the vice president of plaintiff's employer told a manager at defendant's corporate headquarters that the store manager had decided that plaintiff had not intended to steal the nut. Defendant's corporate headquarters, however, told plaintiff's attorney that regardless of whether plaintiff intended to steal the nut, defendant still intended to prosecute plaintiff because it was defendant's company policy to prosecute every case. Despite defendant's repeated insistence on having plaintiff prosecuted for shoplifting, on the date set for plaintiff's criminal trial no one from defendant's company appeared, and the judge dismissed the charges.

After the trial date William Payne, defendant's "legal enforcement manager," sent plaintiff a letter dated April 10, 1995, making a "civil restitution settlement demand." In the April 10 letter Payne wrote that plaintiff had been apprehended for concealing and taking unpaid merchandise from the store on December 12, 1994. The letter further stated that under "Illinois Statutes" Chapter 38 Sections 16A–3 & 16A–7,[2] any person who commits retail theft (shoplifts) can be sued civilly by the owner of the property. The letter offered that to avoid additional time and expense to plaintiff of defending a law suit, defendant was "willing to settle the matter for [defendant's] actual costs in processing [plaintiff's] case." Defendant offered to settle all civil claims against plaintiff for $100. The letter noted that settlement of defendant's civil claim did not prevent local authorities from proceeding with a criminal prosecution.

Defendant, through Payne, then sent plaintiff a follow up letter dated May 16, 1995, giving plaintiff "final notice" to "amicably settle" the matter, stating that if defendant did not receive a $100 payment by May 30,

1995, defendant would file a lawsuit. Plaintiff filed the instant case against defendant on June 14, 1995. Defendant has not filed a counterclaim or otherwise made good on its "legal enforcement manager's" threat to sue plaintiff for the 70 cent nut.

## Discussion

 A Rule 12(c) motion is governed by the same standard as a motion to dismiss under Rule 12(b)(6). *Rooding v. Peters,* 876 F.Supp. 946, 947 (N.D.Ill.1995); *Craigs, Inc. v. General Elec. Capital Corp.,* 12 F.3d 686, 688 (7th Cir., 1993). The motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief, and that the movant is entitled to judgment as a matter of law. *Id., National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir., 1987). The court considers only the matters presented in the pleadings and must view the facts in the light most favorable to the nonmoving party. *National Fidelity Life Ins.,* 811 F.2d at 358.

### False Arrest/Imprisonment

 Defendant raises two arguments in support of its motion for judgment on the pleadings as to plaintiff's claim for false arrest/imprisonment. First, defendant asserts that it had probable cause to arrest and detain plaintiff. Under Illinois law, a claim for false arrest must allege the restraint of an individual's liberty without probable cause. *Jones v. Village of Villa Park,* 815 F.Supp. 249, 253 (N.D.Ill.1993), citing, *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 475, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990). Probable cause is an absolute defense to an action for false arrest and false imprisonment. *Burghardt v. Remiyac,* 207 Ill.App.3d 402, 406, 152 Ill.Dec. 367, 565 N.E.2d 1049 (2nd Dist.1991); *Myatt v. City of Chicago,* 816 F.Supp. 1259, 1266 (N.D.Ill.1992).

 The existence of probable cause is a question of law for the court to determine. *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964). Under Illinois law, probable cause is defined as "a state of

---

**2.** A copy of the applicable Illinois Statutes were attached to the letter.

facts that would lead a [person] of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Burghardt*, 207 Ill.App.3d at 405, 152 Ill.Dec. 367, 565 N.E.2d 1049. "It is the state of mind of the one commencing the [arrest or imprisonment], and not the actual facts of the case or the guilt or innocence of the accused which is at issue." *Id.*, 207 Ill.App.3d at 406, 152 Ill.Dec. 367, 565 N.E.2d 1049.

In the instant case plaintiff was detained and turned over to the police for alleged retail theft actionable under § 16A–3 of the Illinois Criminal Code of 1961 (720 ILCS § 5/16A–3), which provides in part:

A person commits the offense of retail theft when he or she knowingly:

(a) Takes possession of, . . . any merchandise . . . offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession, . . . of such merchandise without paying the full retail value . . .

Therefore, the issue presented by defendant's motion is whether plaintiff's allegations can support a finding that a person of ordinary caution and prudence would not believe or even entertain an honest and strong suspicion that plaintiff took the nut without intending to pay for it. They can. It is hard to imagine that under the facts alleged any person of ordinary caution could strongly suspect that plaintiff intended to pay for the more expensive pipe wrap but also intended to steal the 70 cent nut. Of particular import is the allegation that the police officer believed, and told defendant that he believed, that it was an honest mistake. Accordingly, the court concludes that if plaintiff proves the allegations of the complaint, he will establish that defendant did not have probable cause to arrest and detain him.

■ Next, defendant argues that it is entitled to judgment on its affirmative defense based on section 16A–6 because even if it did not have probable cause, its actions were reasonable under sections 16A–4 and 5 of the Criminal Code.

Section 16A–4 provides:

If any person:

(a) conceals upon his or her person or among his or her belongings, unpurchased merchandise displayed, held, stored or offered for sale in a retail mercantile establishment; and

(b) removes that merchandise beyond the last known station for receiving payments for that merchandise in that retail mercantile establishment such person shall be presumed to have possessed, carried away or transferred such merchandise with the intention of retaining it or with the intention of depriving the merchant permanently of the possession, use or benefit of such merchandise without paying the full retail value of such merchandise.

Section 16A–5 provides:

Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person, on or off the premises of a retail mercantile establishment, in a reasonable manner and for a reasonable length of time for all or any of the following purposes:

(a) To request identification;

(b) To verify such identification;

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable investigation of the ownership of such merchandise;

(d) To inform a peace officer of the detention of the person and surrender that person to the custody of a peace officer;

. . . . .

Section 16A–6 provides that:

A detention as permitted in this Article does not constitute an arrest or an unlawful restraint, as defined in Section 10–3 of the Code, nor shall it render the merchant liable to the person so detained.

■ Whether defendant's detention of plaintiff was permitted under the Article depends on whether it was "reasonable." 720 ILCS 5/16A–5. It was most likely reasonable for defendant to stop plaintiff initially,

because under section 16A–4 it could presume that plaintiff intended to "steal" the nut. Under section 16A–5, however, defendant had to have reasonable grounds to believe that plaintiff committed retail theft and could only detain plaintiff a reasonable amount of time to make that determination. Defendant has the burden of proving that the actions of its security force were "reasonable." *Adams v. Zayre Corp.,* 148 Ill. App.3d 704, 712, 102 Ill.Dec. 121, 499 N.E.2d 678 (2d Dist.1986). Whether defendant's agents acted "reasonably" in continuing to detain plaintiff after refusing to hear plaintiff's explanation and after the police officer told defendant that plaintiff did not intend to steal the nut is a question for the jury to determine. *Id.,* citing, *Robinson v. Wieboldt Stores, Inc.,* 104 Ill.App.3d 1021, 1025, 60 Ill.Dec. 767, 433 N.E.2d 1005 (1st Dist.1982).

Accordingly, the court concludes that under the facts alleged, defendant is not entitled to a finding as a matter of law that the entire length of detention at defendant's store and then at the police station was reasonable and permitted under the statute. Therefore, defendant's motion for judgment on the pleadings on Count I is denied.

### Intentional Infliction of Emotional Distress

In Count II, plaintiff alleges that the facts set forth in the amended complaint state a claim against defendant for intentionally inflicting emotional distress upon plaintiff. Under Illinois law, the tort of intentional infliction of emotional distress contains the following elements:

(1) extreme and outrageous conduct by the defendants;

(2) intent to cause, or a reckless disregard of the probability of causing, emotional distress;

(3) severe or extreme emotional distress suffered by the plaintiff;

(4) actual and proximate causation of the emotional distress by defendant's outrageous conduct.

*Slaughter v. Waubonsee Community College,* 1994 WL 663596 *3 (N.D.Ill.1994), citing, *Public Finance Corp. v. Davis,* 66 Ill.2d 85, 89–90, 4 Ill.Dec. 652, 360 N.E.2d 765

(1976). Illinois courts have consistently held that the conduct must be particularly egregious. "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found [only when the conduct] is so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency." *Public Finance Corp.,* 66 Ill.2d at 89–90, 4 Ill.Dec. 652, 360 N.E.2d 765; *see also, Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir.1989) ("mere insults, indignities, threats, annoyances, petty oppression, or other trivialities" are not enough to constitute intentional infliction of emotional distress).

In his amended complaint plaintiff alleges that he placed a 70 cent nut in his pocket and left defendant's store without paying for the item. Defendant's agents then detained him, took his picture and placed it on a board in its store, turned plaintiff over to the police, and swore out a criminal complaint against plaintiff with the police. Defendant refused to drop the criminal complaint. No one from defendant appeared at the criminal hearing, and the judge dismissed the charges. Following the dismissal of the criminal charges, plaintiff received the two letters from defendant recited in the facts above.

In *Public Finance,* 66 Ill.2d at 90, 4 Ill. Dec. 652, 360 N.E.2d 765, a case relied on by plaintiff, the court held that:

> infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

Citing *State National Bank v. Academia, Inc.,* 802 S.W.2d 282, 298 (Tex.App.1990), plaintiff appears to argue that repeated

harassment of an individual alone constitutes intentional infliction of emotional distress. In *State National Bank,* citing *Public Finance* and *McGrath v. Fahey,* 163 Ill.App.3d 584, 117 Ill.Dec. 304, 520 N.E.2d 655 (1987), the court held that, "[t]he law intervenes only when the distress inflicted is so severe that no reasonable man could be expected to endure it. Distress of this severity may be brought on, for example, by a pattern of harassment or coercion involving extreme, continuous, and threatening demands."

Although the facts alleged might cause a reasonable person grief, shame humiliation and worry, under *Public Finance* and *State National Bank,* the court finds that the allegations in the amended complaint do not state a cause of action for intentional infliction of emotional distress because the distress alleged cannot be regarded as "so severe that no reasonable man could be expected to endure it." Accordingly, the court grants defendant's motion for judgment on Count II of the amended complaint.

### Consumer Fraud and Deceptive Trade Practices Act

 In Count III of the amended complaint plaintiff alleges that defendant violated the Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS § 505/1 *et seq.* (the "Act"), in that, "[d]efendant's policy ... to prosecute 'every case' without regard to whether the consumer intends to steal coupled with defendant's deceptive and false statements in its demand letters attempting to extort money from [plaintiff], indicates that defendant's deceptive practice and fraud threatens to harm the public and other consumers and/or [plaintiff] in the future if this practice is not ceased." Defendant moves for judgment on the pleadings, asserting that the Act does not apply to the instant case because plaintiff is not a "consumer" within the meaning of the Act.

Under the Act a "consumer" is any person "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS § 505/1(e); *Norton v. City of Chicago,* 267 Ill.App.3d 507, 510, 204 Ill.Dec. 938, 642 N.E.2d 839 (1st Dist.1994). Defendant asserts that plaintiff is not a "consumer" as defined in § 505/1(e) with respect to the nut which led to the incidents underlying plaintiff's case.

Plaintiff argues that defendant's motion for judgment on Count III should be denied because there is a "question of fact" whether plaintiff was a "consumer" within the meaning of the Act. Plaintiff has no authority for his argument that statutory construction is a question of fact rather than a matter of law. Further, plaintiff cites no authority for his view that when he took the nut out of defendant's store without paying for it he was a "consumer" of that nut.

While not stated as such, defendant's argument is that plaintiff lacks standing to bring an action alleging a violation of the Act because he is not a consumer. This argument has routinely been raised and dealt with as a matter of law on motions to dismiss. *See, Norton v. City of Chicago,* 267 Ill.App.3d 507, 509–10, 204 Ill.Dec. 938, 642 N.E.2d 839 (1st Dist.1994) (the plaintiffs who allegedly committed parking violations were not "consumers" under the Act because they did not purchase or contract for purchase of merchandise); *Indus. Specialty Chem. v. Cummins Engine Co.,* 902 F.Supp. 805, 811–12 (N.D.Ill.1995).

It is undisputed that plaintiff did not purchase or contract to purchase defendant's nut at the time he left defendant's store, and that this case resulted from that conduct. While plaintiff may have been considered a "consumer" of the pipe wrap,[3] the court finds that plaintiff was not a "consumer" under the Act for the purposes of this case.

### Conclusion

For the reasons set forth above, the court denies in part and grants in part defendant's motion for judgment on the pleadings. The

---

**3.** Under the language of § 505/1(e), because plaintiff was going to be reimbursed by his employer for the pipe wrap, which was to be used to repair his employer's sprinkler system, it is unclear whether plaintiff was a "consumer" of the pipe wrap for purposes of the Act. This issue, however, is not before the court and is not relevant to the present motion.

court denies defendant's motion for judgment on Count I. The court grants defendant's motion for judgment on Counts II and III and dismisses those counts with prejudice. This case is set for status on May 28, 1996, at which time the parties are to be prepared to discuss a discovery cut-off date within 45 days and a date to file the parties' final pre-trial order.