*In re* ESTATE OF KENNETH THOMPSON, Deceased.—(VIRGINIA THOMPSON, Adm'x of the Estate of Kenneth Thompson, Deceased, Petitioner-Appellee, *v.* CONTINENTAL ASSURANCE COMPANY, Respondent-Appellant.)

First District (5th Division)    No. 80-1330

Opinion filed August 7, 1981.—Rehearing denied September 11, 1981.

Abraham W. Brussell and Mary F. Stafford, of Epton, Mullin, Segal & Druth, Ltd., of Chicago, for appellant.

Barry A. Feinberg and William J. O'Connor, both of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The administratrix of the estate of Kenneth Thompson petitioned for a citation to recover the proceeds of an insurance policy on his life. Respondent, Continental Assurance Co., has already paid this money to the named beneficiary—Kenneth's widow Kathleen. After she received the money, Kathleen confessed that she had been involved in Kenneth's murder.

Cross-motions for summary judgment were filed and the trial court entered judgment for petitioner in the amount of the policy proceeds. Respondent's cross-motion was denied. And, the court also ruled that petitioner was entitled to an award of attorneys fees and costs. The written order which contains these rulings states that, "this is a Final Judgment and there is no just reason to delay enforcement or appeal

hereof." The principal issues raised by this appeal are whether it was proper to grant petitioner's motion for summary judgment and whether respondent can appeal from an order denying its motion for summary judgment.

The material facts follow. For the purposes of our decision we need only consider the facts which can be gathered from the documents filed by petitioner in support of her motion.

Kathleen Thompson conspired with her boyfriend, Robert Gorham, to murder Kenneth Thompson so they could collect the proceeds of Kenneth's life insurance. On January 10, 1975, Gorham killed Kenneth by shooting him in the head. Almost immediately, Kathleen and Gorham became the main suspects in the case. But, despite strong suspicions, the police did not have enough information to make arrests or file charges.

Within a month of the killing, the police put respondent on notice that Kathleen was a principal suspect. In addition to phoning one of respondent's agents, the officer in charge of the investigation sent a copy of the case report to respondent. Then, in April and May of 1975, respondent paid $66,000 in policy proceeds to Kathleen.

The break in the case came in September of 1975 when the police learned that Gorham wrote a letter that contained derogatory statements about Kathleen. Using this information as a wedge, the investigating officers told Kathleen about these insulting remarks. She responded with a confession that implicated Gorham.

After plea bargaining, Kathleen pled guilty to a charge of conspiracy to commit murder, and she was sentenced to a term of 1 to 10 years imprisonment. Based on her testimony, Gorham was convicted of murder and sentenced to a term of 100 to 200 years imprisonment.

Opinion

■■ The law will not permit a murderer to collect the proceeds of insurance on the life of her victim. (*State Farm Life Insurance Co. v. Smith* (1977), 66 Ill. 2d 591, 363 N.E.2d 785.) The typical case involving this principle is a contest between beneficiary and insurer, but, in this case, respondent paid the policy proceeds to the named beneficiary and, now, the victim's estate seeks to hold the insurer liable on the policy.

■■ Respondent argues that prior payment to the named beneficiary discharged it from liability on the policy. Petitioner does not dispute that an insurer which pays proceeds to the named beneficiary is discharged from liability on the policy if it acted in good faith. (*Weed v. Equitable Life Assurance Society of the United States* (5th Cir. 1961), 288 F.2d 463, cert. denied (1961), 368 U.S. 821, 7 L. Ed. 2d 27, 82 S. Ct. 40.) But, petitioner argues that the record establishes that respondent acted in bad faith, as a matter of law (Ill. Rev. Stat. 1979, ch. 110, par. 57), because the

insurer allegedly acted (a) with notice of facts which would defeat the beneficiary's claim and (b) without sufficient investigation.

We disagree. Even considering the record in the light most favorable to petitioner, the facts would establish, at best, that when respondent paid the proceeds to Kathleen, it knew the police strongly suspected her complicity in Kenneth's death. But, the suspicion of police officers is not, by itself, sufficient to defeat a beneficiary's claim to insurance money. Therefore, there is no basis in the record for concluding, as a matter of law, that respondent paid proceeds to the named beneficiary with notice of facts which would have defeated her claim.

We agree that the obligation of good faith might require reasonably prudent prepayment investigation when an insurer is aware of suspicious circumstances concerning a beneficiary and the death of an insured. However, we conclude that this component of the obligation of good faith is not violated unless reasonably prudent investigation would have uncovered facts which would have defeated the beneficiary's claim. For example, in the present case, the manner in which the murder case was actually solved shows that there is no basis in the record for concluding, as a matter of law, that respondent acted in bad faith by not conducting an independent investigation. In short, petitioner was not entitled to judgment as a matter of law because its supporting documents are not sufficient to establish that respondent acted in bad faith.

Respondent also argues that the petition for citation does not state a cause of action. In support of this argument, respondent states that it cannot be held liable on the contract because it already paid the proceeds to the named beneficiary. Of course, this argument presupposes that the insurer acted in good faith. And, as we already observed, this is an open question. We conclude that, if respondent did not act in good faith in paying the proceeds to the named beneficiary, then respondent remains liable on the policy.

■■ Respondent further argues that the trial court should have granted its cross-motion for summary judgment. The trial court's written order states that "this is a Final Judgment and there is no just reason to delay enforcement or appeal hereof." Although this finding would make it possible to appeal from a final judgment as to fewer than all the claims or parties in a case (Ill. Rev. Stat. 1979, ch. 110A, par. 304(a)), a Rule 304(a) finding does not convert a nonappealable interlocutory order into an appealable final judgment. (*Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 344 N.E.2d 461.) Moreover, an order denying a motion for summary judgment is not an appealable order (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468), even if the trial court made a Rule 304(a) finding (*Marshall Field & Co. v. Green* (1968), 96 Ill. App. 2d 6, 238 N.E.2d 244). Consequently, we conclude that

we do not have jurisdiction to consider the propriety of the order denying respondent's motion for summary judgment.

For the preceding reasons, the order of the circuit court granting petitioner's motion for summary judgment is reversed and the case is remanded for further proceedings. We need not consider the propriety of awarding attorneys fees and costs because that part of the trial court's order necessarily falls with the reversal of the judgment upon which the award was based. Furthermore, respondent's appeal from the order denying its cross-motion for summary judgment is dismissed.

Reversed and remanded in part, dismissed in part.

SULLIVAN, P. J., and MEJDA, J., concur.