APRIL IVERSON, a/k/a April Polachek, Plaintiff-Appellant, v. SCHOLL, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 84—1893

Opinion filed July 30, 1985.—Rehearing denied October 15, 1985.

Dimitri & Mlade, Ltd., of Berwyn, for appellant.

Burke, Griffin, Chomicz & Wienke, P.C., of Chicago (Michael P. Mullen and Stephen C. Voris, of counsel), for appellee Bankers Life and Casualty Company.

Tyrrell & Flynn, of Chicago (Michael A. Tyrrell, Timothy J. Murphy, and Marcia L. Cohen, of counsel), for appellee Scholl, Inc.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This action was brought by plaintiff April Iverson, formerly known as April Polachek, to recover the proceeds of a life insurance policy under which she was the named beneficiary.

In 1973, John Polachek, formerly an employee of defendant Scholl, Inc. (Scholl) obtained a life insurance policy under Group Policy No. 573—A, ID No. A—5457, and named plaintiff, his niece, the beneficiary. The policy was issued by defendant Bankers Life and Casualty Company (Bankers). In her original unverified complaint, filed April 22, 1983, plaintiff contended that when John Polachek died, Scholl negligently and carelessly neglected to inform Bankers that plaintiff was an 11-year-old minor. Plaintiff alleged that Bankers then mailed the $10,000 death benefit check to plaintiff without making any inquiry as to plaintiff's age and without demanding that a guardian be established for plaintiff prior to mailing the check. As a consequence, plaintiff claimed that her father, defendant Alexander John Polachek, who is not a party to this appeal, induced plaintiff to endorse the check and then misappropriated the proceeds. Plaintiff thus contended that Scholl and Bankers were liable for the amount of the proceeds to plaintiff.

On June 7, 1983, Bankers moved to dismiss the complaint. On July 14, 1983, Scholl and Plough, Inc. (Plough had purchased all of Scholl's assets) filed an amended motion to dismiss. On December 7, 1983, the trial court struck plaintiff's complaint and gave plaintiff leave to file a first amended complaint *instanter*. The court continued Bankers' motion to dismiss and allowed it to stand as directed against the first amended complaint. Plaintiff's first amended complaint was identical to the original complaint except that in paragraph four of the amended complaint, plaintiff alleged that "Bankers and/or Scholl mailed" the check; in the original complaint, plaintiff had alleged that Bankers mailed the check.

On March 14, 1984, the trial court held a hearing on Bankers' motion to dismiss the first amended complaint. Bankers' motion was originally brought as a section 2—619 motion (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), but at the hearing, Bankers acknowledged that its motion should be treated as a section 2—615 motion (Ill. Rev. Stat. 1983, ch. 110, par. 2—615), alleging that plaintiff's negligence claim was insufficient as a matter of law. At the hearing, plaintiff contended that the Illinois facility of payment to minors act (Ill. Rev. Stat. 1981, ch. 110½, par. 25—2) was controlling and imposed a duty upon Scholl and Bankers to determine that plaintiff was a minor and to pay the sum to an appointed guardian. Failure of defendants to do so, plaintiff argued, was negligence. Defendants argued that the statute was immaterial because it does not affirmatively require an entity to investigate and determine whether it is dealing with a minor. Additionally, defendants argued that plaintiff did not allege any facts indicating that defendants knew or should have known that she was a mi-

nor. The trial court dismissed the first amended complaint with leave to amend. The court stated that it did not believe that the statute stood for the proposition asserted by plaintiff. Rather, the court believed that the statute meant only that if a claim was paid by way of affidavit under the statute, the entity so paying would be discharged and not required to see to the application or disposition of the property. The court stated that it believed the only thing plaintiff could do on leave to amend was to show facts as to why defendants were careless, as if, for instance, defendants had knowledge of plaintiff's minority.

On April 11, 1984, plaintiff filed a three-count second amended complaint. Count I was virtually identical to the first amended complaint, alleging essentially that plaintiff was incapable of negotiating the check received or of effecting a valid discharge of said check. Count I further alleged that defendants negligently and carelessly failed to determine that plaintiff was a minor and then negligently and carelessly sent the check to plaintiff without inquiring as to her age and demanding that a guardian be established. There was no allegation that defendants knew or should have known that plaintiff was a minor. Count II alleged that defendants breached a provision of the insurance policy. The provision gave the insurance company the option of paying money owed to a person supporting or caring for a payee deemed incapable of giving a valid receipt and discharge for payment. Count III alleged a violation of section 25—2 and of article 11 of the Probate Code. Defendants Scholl and Bankers moved to dismiss under section 2—615. The court dismissed the second amended complaint on July 3, 1984, for the same reasons given when the first amended complaint was dismissed. It is from the order dismissing her second complaint that plaintiff appeals.

■ The standard of review employed when a complaint is dismissed pursuant to section 2—615 is that an action should not be dismissed for failure to state a cause of action or for insufficiency at law unless, clearly, no set of facts could be proven under the pleadings which would entitle plaintiff to relief. (*Samuels v. Checker Taxi Co.* (1978), 65 Ill. App. 3d 63, 65, 382 N.E.2d 424.) The section 2—615 motion admits all well pleaded facts and all reasonable inferences able to be drawn from those facts. (65 Ill. App. 3d 63, 65.) Lastly, the reviewing court is to interpret the allegations of the complaint in a light most favorable to the nonmovant. 65 Ill. App. 3d 63, 65.

■ Plaintiff's second amended complaint consisted of three counts. Count II alleged a violation of a provision in the insurance policy which gave Bankers the option of making monthly installments

when paying a minor payee. There is, however, no set of facts which would sustain an action under count II in that the specific contractual provision gave Bankers an option to pay proceeds in a certain manner. That they chose to pay in a different manner does not render them liable under the policy. The provision in the policy explicitly gave Bankers discretion in the manner of payment.

■ Count III alleged a violation of section 25—2 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 25—2), which provides for payment by affidavit when an obligation is owed to a ward and the personal estate of the ward does not exceed $5,000. That section provides in full as follows:

> "Sec. 25—2. When appointment of representative of ward unnecessary. Upon receiving an affidavit that the personal estate of a ward does not exceed $5,000 in value, that no representative has been appointed for his estate and that the affiant is a parent or a person standing in loco parentis to the minor or is the spouse of the ward or, if there is no spouse of the ward, that affiant is a relative having the responsibility of the support of the incompetent or ward, any person or corporation indebted to or holding personal estate of the ward may pay the amount of the indebtedness or deliver the personal estate to the affiant. In the same manner and upon like proof, any person or corporation having the responsibility for the issuance or transfer of stocks, bonds or other personal estate may issue or transfer the stocks, bonds or other personal estate to or in the name of the affiant. Upon the payment, delivery, transfer or issuance pursuant to the affidavit, the person or corporation is released to the same extent as if the payment, delivery, transfer or issuance had been made to the legally qualified representative of the ward and is not required to see to the application or disposition of the property."

Plaintiff alleges that since the sum involved here exceeded $5,000, the statute created a duty on defendants to pay the sum to a duly appointed guardian or representative. Though the statute is without the benefit of decisional law, it is clear that the statute becomes operational only upon receipt of an appropriate affidavit by the indebted entity. At that point, the indebted entity may pay to the affiant the amount owed to the ward. The statute is permissive in nature in that the indebted party may pay either by affidavit or to the legal representative. Equally so, the statute suggests and presupposes that the indebted party has knowledge that the payee is a ward, knowledge specifically denied by defendants herein. Plaintiff's argument that

when the sum owed exceeds $5,000 the payor must pay the legal representative is correct to the extent the payor has knowledge that it is dealing with a ward. Most payors would seemingly have such knowledge, or would seek to acquire it, before making payment. Whether the statute creates an affirmative duty to inquire and then pay either the affiant or the legal representative is an unsettled question. In our opinion, however, the statute is not operational when the payor has no knowledge, or any reason to know, that it is dealing with a ward. Consequently, the only principles available to evaluate and adjudicate the manner in which the defendants here paid plaintiff are those established at common law, and that focuses the inquiry on count I of plaintiff's second amended complaint.

Count I alleged the following: the existence of the policy; the fact of plaintiff's minority at the time the insured died; that plaintiff signed the check drawn in her name at the behest of her father who then misappropriated the funds; and that Scholl and Bankers were negligent and careless in not first ascertaining that plaintiff was a minor and, subsequently, in not seeing to it that the proceeds were paid to her legal representative for her benefit. Based upon the facts alleged in count I, and all reasonable inferences able to be drawn, we reverse the order dismissing plaintiff's second amended complaint and remand this action as to Bankers alone.

The fundamental question posed by count I is whether there has been an effective and valid discharge of Bankers' obligation to pay the life insurance proceeds to plaintiff. Plaintiff, as the named beneficiary of the policy issued by Bankers to John Polachek, was a third-party beneficiary of that contract. Therefore, upon the death of the insured, plaintiff acquired a vested right to the proceeds of the policy. (*Brunnenmeyer v. Massachusetts Mutual Life Insurance Co.* (1978), 66 Ill. App. 3d 315, 318, 384 N.E.2d 446.) As a general matter, Bankers was contractually required to remit the proceeds of that policy to the named beneficiary. The law is settled that an insurer is discharged from liability on an insurance policy if it, while acting in good faith, pays the proceeds to the named beneficiary. (*In re Estate of Thompson* (1981), 99 Ill. App. 3d 303, 304, 426 N.E.2d 1.) The insurer's obligation of good faith requires a reasonable investigation by the insurer when it is aware of suspicious circumstances regarding a beneficiary. The obligation of good faith is not violated unless a reasonable investigation would have disclosed facts sufficient to defeat the named beneficiary's claim. 99 Ill. App. 3d 303, 304-05.

The general principles cited above, however, must be read in conjunction with the law as it relates to minors, like plaintiff. The

public policy of Illinois is to protect minors and their property from the consequences of dealing with others. As such, the courts of this State have consistently and assiduously guarded the rights of minors. (See *Swiney v. Womack* (1931), 343 Ill. 278, 287-88, 175 N.E. 419; *Zozaski v. Mather Stock Car Co.* (1942), 312 Ill. App. 585, 590, 38 N.E.2d 825.) The protection afforded to minors is especially prominent in the area of contracts. The general rule applicable to all contracts, other than for necessaries, is that the contract of a minor is voidable and may be repudiated by the minor during minority or within a reasonable time upon achieving majority absent a ratification. (*Shepherd v. Shepherd* (1951), 408 Ill. 364, 375, 97 N.E.2d 273; *Hunter v. Egolf Motor Co.* (1932), 268 Ill. App. 1, 4, 6.) "The exercise of a minor's right to disaffirm his contract may operate injuriously and sometimes unjustly against the other party, but the right exists for the protection of the infant against his own improvidence and may be exercised entirely in his discretion." (268 Ill. App. 1, 6.) The ignorance of one party to the contract of the minority of the other party is, generally, of no consequence and does not operate as a bar to the right of the minor to disaffirm. (*Wieland v. Kobick* (1884), 110 Ill. 16, 18.) The right to disaffirm applies whether the contract is wholly executory or fully executed (*Collins v. Peters Real Estate Improvement Corp.* (1929), 252 Ill. App. 348, 350) and, if the consideration is lost or expended, the minor is not bound to make restitution. *Shellabarger v. Jacobs* (1942), 316 Ill. App. 191, 196, 45 N.E.2d 184.

The crucial question thus becomes, in light of the foregoing principles, whether plaintiff has discharged Bankers' obligation to pay the proceeds. This court holds that plaintiff, as a minor, was legally incapable of discharging Bankers' obligation and that Bankers must draw another check, in favor of plaintiff, and pay the proceeds to either plaintiff's legal representative or to another person able to legally discharge Bankers on plaintiff's behalf or for plaintiff's benefit.

In *Potirus v. American National Insurance Co.* (1951), 344 Ill. App. 515, 101 N.E.2d 620, this court held, under Missouri law, that a minor beneficiary of a life insurance policy "was not legally qualified to release defendant [American National Insurance] upon payment of the amount due upon the policy." (344 Ill. App. 515, 517.) In that case, the defendant's policy contained a facility of payment clause authorizing defendant, at its option, to pay the proceeds to various persons legally qualified to release it. The plaintiff, a minor, filed a proof of loss form and an affidavit of minority appointing her step-grandfather, the husband of the insured, as her trustee. The defendant issued a check payable to plaintiff and the trustee. Apparently, the trustee

took the money. At trial, it was shown that the trustee induced plaintiff to sign the affidavit in blank, that he filled the affidavit in later, designating himself father and trustee of plaintiff, and that plaintiff's signature on the check was forged. The court thus affirmed the judgment in favor of plaintiff.

■ The overriding favor involved in *Potirus* and here is the plaintiff's minority and presumed inability to competently handle such transactions. That plaintiff's father absconded with the money rather than putting it to her benefit seems clear. But, Bankers had a duty to see that plaintiff, as the named beneficiary, received the proceeds. Since, as a minor, plaintiff was legally incompetent to complete the transaction by virtue of being unable to discharge Bankers' obligation, payment should have been made, on her behalf, to her legal representative. Ultimate payment to an unscrupulous father, who denies his child the benefit of a contract executed in her behalf, at a time when she had a vested right to the proceeds, does not operate as a discharge of Bankers' contractual duty to pay plaintiff. In effect, plaintiff's signature on the check was of no legal significance in terms of discharging Bankers. Thus, Bankers has not been discharged of its obligation and must draw another check in favor of plaintiff.

In *Hack v. Metz* (S.C. 1934), 176 S.E. 314, an 11-year-old minor, the named insured in an industrial life policy, was, because of his minority status, unable to effect a valid assignment of the policy. In *Champa v. New York Central Mutual Relief Association* (1936), 57 Ohio App. 522, 15 N.E.2d 172, the court affirmed the action of a minor's guardian setting aside the minor beneficiary's assignment of interest in the proceeds of her father's policy. The court relied on the general principle that minors should be protected in contractual settings arranged during their minority, a principle in full effect in Illinois. Finally, in *Bradley v. Union National Life Insurance Co.* (La. App. 1978), 359 So. 2d 663, the court held that plaintiff minor beneficiary's assignment of the insurance proceeds, because of plaintiff's minority, was null in the absence of a ratification. While these cases all involve a minor as a party to a contract of assignment, the analogy of the minor's legal infirmity corresponds to this situation where the minor is the third-party beneficiary of the contract with a vested right in and to the proceeds. It is beyond question that if Bankers had not paid at all, plaintiff could enforce the contract against Bankers. The net effect here is the same in that plaintiff has not received the proceeds. Consequently, plaintiff's vested right should be protected from Bankers' lack of diligence in making payment.

■ Plaintiff's second amended complaint alleged the payment of

the proceeds to her, the fact of her minority, her endorsement at her father's behest, her father's confiscation of the money, and the lack of care on the part of Scholl and Bankers. Though there is no valid negligence claim, under the principles above, Bankers had a duty to see that plaintiff was paid. Since she was legally incapable of discharging Bankers, Bankers is still contractually liable to plaintiff for the amount of the proceeds. It is without consequence that Bankers had no knowledge that plaintiff was a minor or that it acted in good faith. (*Wieland v. Kobick* (1884), 110 Ill. 16, 18.) Also, the filing of suit is sufficient evidence of plaintiff's desire to disaffirm any purported discharge given by her under the cajoling influence of her father. (*Born v. Chicago City Ry. Co.* (1911), 159 Ill. App. 585, 586.) The fact that Bankers has paid once is of no consequence to this plaintiff's suit. The law recognizes that entities deal with a minor at their own peril, and the law protecting minors has been enforced even when it results in unfairness or injury to the other party. The cases are numerous where the courts have jealously guarded the rights of minors vis-a-vis the careless, unsuspecting, or unscrupulous others. This court therefore reverses the order dismissing Bankers and remands the action for a trial.

■ As to Scholl, there is no set of facts plaintiff could allege in order to raise a viable claim against it. Scholl was not a party to the contract of insurance on which Bankers remains liable. Also, Scholl does not owe a duty, as the employer of the insured, to the named beneficiary. Scholl's sole obligation was to notify Bankers of the fact of the death of an insured and provide Bankers with the name of the beneficiary. It is hornbook law that agents are generally not liable for the acts of their principal or under the contracts of their principal. Thus, the order of dismissal as to Scholl is affirmed.

Affirmed.

HARTMAN and BILANDIC, JJ., concur.