HAROLD F. McGRATH, Plaintiff-Appellant, v. ROBERT P. FAHEY *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 86—2994

Opinion filed November 20, 1987.

William J. Harte, Ltd., of Chicago (William J. Harte and Jeffrey B. Whitt, of counsel), for appellant.

Cassiday, Schade & Gloor, of Chicago (Michael J. Gallagher, Bruce M. Wall, Susan E. Seiwert, and Judith A. Schieber, of counsel), for appellees.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Dr. Harold F. McGrath, appeals from an order of the circuit court of Cook County dismissing his complaint against defendants, Robert P. Fahey and First Security Bank of Glendale Heights, now known as Du Page County Bank of Glendale Heights, charging them with the infliction of emotional distress caused by defendants' intentional or reckless conduct. The only issue on appeal is the sufficiency of plaintiff's complaint. For the reasons set forth below, we reverse and remand the cause for further proceedings.

The record discloses that defendants' alleged infliction of emotional distress arose as a result of defendants' refusal to release certain funds deposited under various accounts in defendant bank. Specifically, plaintiff alleged that the following events occurred:

> 1982—Plaintiff and his partner, Terrace Management, Inc., entered into a real estate contract to sell certain apartment buildings owned by them to James Elliot, owner of the First Security Bank of Glendale Heights, now known as Du Page County Bank of Glendale Heights (the bank). Subsequently, the parties accused each other of fraud concerning their real estate contract and plaintiff and his partner lost approximately $4 million.

> May 18, 1983—Plaintiff attempted to arrange with the bank for the transfer of 10 certificates of deposit totalling over $1 million, but was told that no one with authority was available to handle the transaction.

> May 19—Plaintiff spoke to Robert P. Fahey, president of the bank, concerning the transfer of the certificates. Fahey asked plaintiff's intentions concerning the certificates, then advised plaintiff they could not be withdrawn because of problems which had arisen concerning the real estate contract. Plaintiff

told Fahey the certificates had no connection with the contract and were, instead, being held in trust for his children and employees. Fahey accused plaintiff of being involved in a scheme to defraud the bank in connection with the contract. Plaintiff advised Fahey he was a victim, not a participant, of any scheme and again asked, but was refused, release of the certificates.

May 20—Plaintiff called Wayne M. Kwiat, the attorney who handled the real estate contract matter, concerning the bank's refusal to release the certificates. Kwiat arranged a meeting with Robert D. Glick, the bank's attorney, for May 23.

May 23—Plaintiff, Kwiat and Glick met at Kwiat's office. Plaintiff told Glick his father had died young from a heart attack, that heart problems ran in his family and that the refusal of the bank to release the certificates was making him extremely anxious and he was concerned about the effect on his health. Glick refused to discuss the certificate matter; he said he would only discuss the real estate contract matter and, at the same time, told plaintiff he must assign to the bank his interest in certain second mortgages held in connection with the contract and, if he refused to do so, the bank would financially ruin him and his medical practice. Glick then repeated his refusal to release the certificates.

May 24—Plaintiff called and met with Edward T. Joyce of Joyce & Kubasiak, P.C., concerning the certificate matter. Joyce called Glick and told him that the bank had no legal right to hold the certificates and informed him that plaintiff was becoming physically ill over the matter; plaintiff had become ill during the meeting with Joyce. Glick again refused to release the certificates.

May 25—Martin W. Salzman, an attorney in Glick's law firm, responded to a prior letter of Joyce's that the bank needed execution and appropriate documentation and delivery of the original certificates of deposit in order to make a wire transfer of the certificates to Northern Trust Company, even though Joyce's letter had included the signatures of plaintiff and his wife authorizing release of the certificates.

Plaintiff suffered a massive heart attack and underwent open heart surgery.

Richard J. Cremieux, an attorney with the law firm of Joyce & Kubasiak, P.C., advised Glick of plaintiff's heart attack and asked for the release of the certificates. Glick stated he would

not transfer the certificates, not because of any documentation problem, but because no transfer could take place until plaintiff assigned his second mortgages to the bank which he held in connection with the real estate contract. Glick also threatened to tie up the certificates for five years.

May 26—Joyce spoke with Salzman, who agreed to transfer the certificates.

Shortly after the transfer of the certificates—The bank refused eight drafts drawn by plaintiff on a checking account owned by plaintiff and his wife, a checking account owned by Terrace, and an insured money market fund of McGrath Cousins Corporation, Inc., owned by the Josephine A. McGrath Trust. Plaintiff further alleged that these accounts had no connection with the real estate contract dispute and that one of defendants' attorneys had assured plaintiff there would be no problem with the withdrawal on any of the accounts upon which plaintiff was the signatory, except for one account relating to the real estate contract.

August—While plaintiff was home recuperating from his heart surgery, Fahey called him. Plaintiff told him he did not wish to speak to him. Fahey nonetheless called plaintiff a couple of times more. Consequently, plaintiff's attorneys called Salzman and insisted the bank call them and not plaintiff, especially in light of plaintiff's health.

August 16—The bank filed a lawsuit against plaintiff and others concerning the real estate contract dispute.

August 17—Fahey sent plaintiff a letter stating it was setting off the three accounts against the amount it claimed due in its lawsuit against plaintiff.

August 18—Cremieux messengered a response to the bank's letter to Salzman advising him of Fahey's ongoing attempt to coerce plaintiff into surrendering his second mortgages in connection with the real estate contract dispute and of the additional stress inflicted upon plaintiff by Fahey's conduct.

Based upon defendants' conduct during the entire period, plaintiff filed a complaint against defendants alleging that they intended to inflict severe emotional distress upon him "or acted recklessly in deliberate disregard of a high degree of probability that emotional distress would result" from their actions. The trial court, upon motion by defendants, dismissed plaintiff's complaint pursuant to section 2—615 of the Code of Civil Procedure for failure to state a cause of action (Ill. Rev. Stat. 1985, ch. 110, par. 2—615), holding that defendants' al-

leged conduct did not constitute the extreme and outrageous conduct required for recovery on a theory of intentional infliction of emotional distress. This appeal followed.

It is well settled that an action should not be dismissed pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) for failure to state a cause of action or for insufficiency at law unless no set of facts could be proved under the pleadings which would entitle a plaintiff to relief. (*Iverson v. Scholl, Inc.* (1985), 136 Ill. App. 3d 962, 483 N.E.2d 893.) In addition, all well-pleaded facts and all reasonable inferences able to be drawn from those facts must be accepted as true (*City of Chicago v. Department of Human Rights* (1986), 141 Ill. App. 3d 165, 490 N.E.2d 53) and the allegations of the complaint are to be interpreted in a light most favorable to the nonmovant (*Iverson v. Scholl, Inc.* (1985), 136 Ill. App. 3d 962, 483 N.E.2d 893). The necessary elements of a cause of action for the intentional or reckless infliction of emotional distress are: (1) extreme and outrageous conduct; (2) severe emotional distress suffered by the plaintiff; (3) intent by the defendant to cause or a reckless disregard by the defendant of the probability of causing emotional distress; and, where applicable, (4) extreme and outrageous conduct which arises from an abuse of a position or relationship by a party with another who has actual or apparent authority over the other party or power to affect the other party's interests. *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.

We briefly observe that prior to 1961 there was no such tort in Illinois as the intentional infliction of emotional distress. In 1961, our supreme court decided that peace of mind was of sufficient importance to receive protection from an intentional invasion by another. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157 (the plaintiff's complaint stated a cause of action where she alleged she suffered great mental anguish and nervous exhaustion from the defendant's threat to kill her husband and his eventual fulfillment of that threat).) Since 1961, however, this "new" tort has perplexed our trial and appellate courts as to its application to particular factual situations. The main difficulties consist of determining what conduct constitutes "extreme and outrageous" conduct and what emotional distress may be characterized as "severe." To date, extreme and outrageous conduct has been defined only as conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency"; mere insults, indignities, threats, annoyances, petty oppressions or trivialities do not constitute extreme and outrageous conduct. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360

N.E.2d 765, quoting Restatement (Second) of Torts, §46, comment *d* (1965).) To constitute severe distress, the distress inflicted must be "so severe that no reasonable man could be expected to endure it"; fright, horror, grief, shame, humiliation, worry, etc., *alone* are not actionable. 66 Ill. 2d at 90.

■ In light of the above, it thus is obvious that cases charging the intentional infliction of emotional distress must be decided on the facts of each case. For example, this court has held that the harassment of an employee by an employer, standing alone, did not constitute a proper cause of action for intentional infliction of emotional distress where the employer harassed the employee by giving him geographically and environmentally undesirable work assignments, refused to give him overtime assignments, criticized him for complying with company rules, gave him an unrealistically demanding work schedule, followed him from job to job, encouraged customers to report complaints about him, made misleading remarks to customers about his job performance, arbitrarily denied his request for a leave of absence and added false information to reports completed by him. However, because the employer's harassment of the employee arose as a result of the employee's refusal to falsify work reports, the harassment of the employee, when taken in the context of an employer attempting to coerce the employee into performing an illegal act, did constitute a cause of action for the intentional infliction of emotional distress. *Milton v. Illinois Bell Telephone Co.* (1981), 101 Ill. App. 3d 75, 427 N.E.2d 829.

In the absence of a coercive factor, however, this court has nonetheless found a stated cause of action based solely on a pattern of harassment in *Sherman v. Field Clinic* (1979), 74 Ill. App. 3d 21, 392 N.E.2d 154. In *Sherman,* the defendant, over a two-month period, telephoned the plaintiff 10 to 20 times per day, three days per week, and five to six times per day two days per week; sent numerous letters to the plaintiff's residence; made numerous telephone calls to the plaintiff at his place of business; made threats to embarrass the plaintiff by contacting his employers and co-workers; threatened to garnish half of the plaintiff's wages; threatened to send the plaintiff to jail; and used profane, obscene and abusive language in the telephone conversations with the plaintiff and his family members. In holding that the plaintiff's complaint stated a cause of action, the *Sherman* court focused upon the profane, obscene and abusive language allegedly used and the number of contacts with the plaintiff.

On the other hand, this court in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, found that the plaintiff's com-

plaint failed to state a cause of action for the intentional infliction of emotional distress where the plaintiff alleged that over a seven-month period the defendant finance company harassed her by calling her several times per week, frequently more than once a day; visiting her home one or more times per week; calling her at a hospital where her daughter was being treated for a brain tumor; coming to her home and making a report of her household goods; and inducing her to write a post-dated check on the promise that the check would not be processed and then telling one of her acquaintances that she was writing bad checks. The plaintiff had further alleged that the finance company was aware at all times that she suffered from hypertension and a nervous condition. On appeal, our supreme court held that the plaintiff had not alleged conduct of such an extreme and outrageous nature to constitute a basis for recovery, stating that the plaintiff failed to allege that during the defendant's agents' telephone calls and visits to her home they used abusive, threatening or profane language or conducted themselves other than in a permissible manner or to allege any conduct by defendant which could be characterized as extreme and outrageous or coercive; the defendant was attempting only to collect a legal obligation from the plaintiff in a permissible though persistent and possibly annoying manner.

In the instant case, defendants argue that their conduct cannot be characterized as a "major" outrage. Instead, they contend that any arguable stress suffered by plaintiff arose in the nature of unavoidable annoyances generally encountered in any business dispute. We disagree.

While we believe it is arguable that defendants' conduct prior to plaintiff's heart attack was not actionable, the same is not true of defendants' conduct after his heart attack. Defendants clearly had special notice that their direct contact with plaintiff during his recuperation from the heart surgery concerning his accounts in their bank and the real estate contract dispute was certain or substantially certain to cause plaintiff severe emotional distress in light of the seriousness of his health (see *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765) and an actor who goes ahead in conscious disregard of such knowledge, causing severe emotional distress, will be held liable for the emotional distress inflicted as a result of his conduct (Prosser, Law of Torts 60 (4th ed. 1971)). Given the chronological setting in this case, the duration of defendants' contact with plaintiff, although over a short period of time, should be considered as a factor in favor of, not against, plaintiff's theory of the intentional infliction of emotional distress in light of the intensity of their conduct before

and during the period of plaintiff's recuperation from his heart surgery. We further observe that although plaintiff did not allege the content of the telephone calls he received from Fahey while recuperating, it may be logically inferred from the defendants' previous course of conduct that the calls concerned their attempt to force plaintiff to assign his second mortgages in connection with the real estate contract dispute. Again, in light of plaintiff's physical condition, defendants' conduct could be deemed outrageous, causing plaintiff severe emotional distress, by the trier of fact.

There is also no dispute that the bank held a position of power over plaintiff's interests and plaintiff sufficiently alleged defendants' coercive use and abuse of that power to force him to assign his second mortgages, first before releasing his certificates of deposits and later by refusing to honor eight drafts drawn on three other accounts. Clearly, the bank had no legal right to withhold the certificates (see *Clemmer v. Drovers' National Bank* (1895), 157 Ill. 206, 41 N.E. 728 (a bank may not apply funds against an individual to settle a debt if the individual is holding the funds as trustee for a third party)) and defendants' "withholding" of the other three accounts, after the bank had advised plaintiff there would be no such problem, could be interpreted as acts done in connection with the real estate contract dispute to force plaintiff to acquiesce to assignment of his second mortgages.

Based on the above reasons and the general rules that all well-pleaded facts and inferences able to be drawn therefrom must be accepted as true and in a light most favorable to the nonmovant, we hold that the trial court erroneously granted defendants' motion to dismiss and, instead, should have required defendants to answer plaintiff's complaint; plaintiff's complaint sufficiently stated a cause of action. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

LORENZ and PINCHAM, JJ., concur.