[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The evidence in this case reveals that in May 1987, the decedent, Norma White ("White"), purchased a life insurance annuity policy from the defendant Pacific Standard Life Insurance Company ("Pacific"). The named beneficiary of the policy was the plaintiff, John Bigley, as trustee of White's estate.
On January 15, 1988, White died in a motor vehicle accident. The value of the annuity policy at the time of her death was $225,343.18. The plaintiff alleges that as of this date, no part of the policy has been paid to the plaintiff, or to any other representative of White's estate.
Pacific alleges that on January 21, 1988, it received a change of beneficiary form containing a signature in the name of Norma White. The form was dated January 8, 1988, and was witnessed by White's grandson, Michael Jurinske. Jurinske is also the agent who procured the annuity policy for White. The new beneficiary was listed as Michael Jurinske, as trustee for Jennifer Jurinske and Elizabeth Spencer (both of whom are White's great grandchildren). On March 22, 1988, after receiving a copy of White's death certificate from Michael Jurinske, the defendant paid him a sum equal to the amount of the policy.
The plaintiff alleges that the change of beneficiary form was forged by Michael Jurinske, and submitted by him in an effort to defraud the defendant. During the trial, there was testimony that at the time the change of beneficiary form was dated and signed, White was in Florida, and thus, it was physically impossible for her to have signed the form. The CT Page 9200 defendant contends that upon receiving the change of beneficiary form, its employees compared the signature to White's signature as it appeared on a different document, and sent a confirmation notice to White's residence.
At trial, one of Pacific's employees testified that the plaintiff first contacted the defendant regarding the policy on May 26, 1988, and that the plaintiff's next communication with the defendant was in November, 1988. Thus, the defendant claims that at the time it paid the proceeds to Jurinske, no adverse claims to the proceeds had been filed. The defendant also claims that it had no notice of any irregularities with respect to the change of beneficiary form.
The first count of the plaintiff's complaint alleged that Pacific was negligent in effectuating the change of beneficiary because the request form was forged. The plaintiff subsequently added a second count which sounds in breach of contract, and alleges that the plaintiff, as the original beneficiary designated by the decedent, is entitled to the proceeds of the policy.
According to Pacific, the plaintiff, in his case in chief, failed to offer any evidence in support of its negligence allegations. At the close of the plaintiff's case, the court granted a judgment of dismissal on the first count, for failure to make out a prima facie case (pursuant to Practice Book 302). Thus, only the breach of contract remains.
A contract between an insured and an insurer is fulfilled and the insurer is discharged from liability on a policy upon payment of the proceeds by the insurer, in good faith, to the named beneficiaries. Couch on Insurance 2d 27:176 (1984); Iverson v. Scholl, Inc., 136 Ill. App.3d 962, 91 Ill. Dec. 407,483 N.E.2d 893 (1985); In Re Estate of Thompson, 99 Ill. App.3d 303, 55 Ill. Dec. 217, 426 N.E. 1 (1981); Bickers v. Shenandoah Valley National Bank, 197 Va. 145, 88 S.E.2d 889, reh. denied, 197 Va. 732, 90 S.E.2d 865 (1955).
In a situation where the insurer's payment of proceeds to a named beneficiary is subsequently contested, the majority rule is that:
 Payment in good faith to the beneficiary of record by the insurance company CT Page 9201 without knowledge of facts vitiating the claim will prevent a second recovery by another claimant.
(Emphasis added). Weed v. Equitable Life Assurance Society of U.S., 288 F.2d 463 (5th Cir. 1961), cert. denied, 368 U.S. 821,82 S.Ct. 40, 7 L.Ed.2d 27 (1961). Accord, Harper v. Prudential Ins. Co. of America, 233 Kan. 358, 662 P.2d 1264 (1983); Union Labor Life Ins. Co. v. Parmely, 270 Md. 146, 311 A.2d 24 (1973); Avondale v. Sovereign Camp W.O.W., 134 Neb. 717, 279 N.W. 355
(1938); Daniels v. Grand Lodge, 62 S.W.2d 548 (Tex.Civ.App. 1933); Renick v. Mutual Life Ins. Co. of N.Y., 106 S.W. 310
(Ky.App. 1907); Metropolitan Life Ins. Co. v. Louisville Trust Co.,89 S.W. 268 (Ky.App. 1905). See also Crosby v. Crosby,785 F. Sup. 1227 (D. Md. 1992); Rogers v. Unionmutual Stock Life Ins. Co., 782 F.2d 1214 (4th Cir. 1986); Smith v. Prudential Insurance Co., 504 S.W.2d 538 (Tex.Civ.App. 1974); Miller v. Paul Revere Life Ins. Co., 81 Wash.2d 302, 501 P.2d 1063 (1972) (In these cases, the courts interpreted state statutes that codify the rule stated in Weed v. Equitable Life Assurance, supra).
 The insurer's obligation of good faith requires a reasonable investigation by the insurer when it is aware of suspicious circumstances regarding a beneficiary. The obligation of good faith is not violated unless a reasonable investigation would have disclosed facts sufficient to defeat the named beneficiary's claim.
(Emphasis added). Iverson v. Scholl, Inc., supra,483 N.E.2d at 897.
Thus, an insurer is liable to the "proper" beneficiary if it pays the named beneficiary when the insurer has prior notice or knowledge of a dispute over the proceeds of a policy. Couch on Insurance 2d 27:178 (1984); McDonald v. McDonald, 632 S.W.2d 636
(Tex.App. 1982); Goldner v. New York Property Ins. Underwriting Assoc., 116 Misc.2d 168, 455 N.Y.S.2d 204 (1982); In Re Estate of Thompson, supra; Miller v. Paul Revere Life Ins. Co., supra; Stavros v. Western Southern Life Ins. Co., Inc.,486 S.W.2d 712 (Ky.App. 1972); Golden State Mutual Life Ins. Co. v. Adams, 340 S.W.2d 77 (Tex.Civ.App. 1960); Redden v. CT Page 9202 Prudential Life Ins. Co., 193 Minn. 228, 258 N.W. 300 (1935).
In McNabb v. Kentucky Central Life Ins. Co., 631 S.W.2d 253
(Tex.App. 1982), the insured's mother (originally listed as the beneficiary) sued the defendant insurer, alleging that the proceeds of several life insurance policies were wrongfully paid to a third party as a result of a forged change of beneficiary form executed by the insurer's agent and the insured's father. In granting summary judgment in favor of the defendant insurer, the court noted that the insurer had no knowledge of any irregularity in the change of beneficiary forms, as well as no proof that the change of beneficiaries was made after the insured's death. The court, citing Couch on Insurance 2d 28:96 and 28:108 (1960), held that an insurer is not under any duty to determine whether the change of beneficiaries was procured or induced by improper means, when the insurer has no reason to believe or know that such was the case. Id., 255. See also Allen v. Investors Heritage, 290 S.E.2d 728 (N.C.App. 1982) (insurer reasonably relied on apparent validity of change of beneficiary form and was not liable to plaintiff for the amount of the policy when the change of beneficiary form appeared to have been properly executed and contained nothing which might have placed the insurer on notice of fraud); State Life Insurance Co. v. Coffrini, 285 F. 560 (3rd Cir. 1922) (insurer has no duty to investigate whether the insured had the mental competency to change the beneficiary unless it knows of circumstances that reasonably suggest the possibility of his mental incompetency); Bosworth v. Wolfe, 146 Wash. 615,264 P. 413 (1928) (insurer is not required to investigate whether a change of beneficiary was procured by undue influence in the absence of knowledge or facts which would indicate that the change might have been so procured). Thus, when a change of beneficiary is apparently made in accordance with the terms of the policy, "the insurer is not obligated to pay the proceeds of the policy other than as provided in the change, without notice of the rights or equities of the original beneficiary." Couch, supra, 27:176; Bennett v. Union Central Life Ins. Co., 220 Iowa 927,263 N.W. 25 (1935). See also Metropolitan Life Ins. Co. v. McMorris, 786 F.2d 379 (10th Cir. 1986).
As stated, the majority rule holds that payment is good faith to the beneficiary of record by the insurance company without knowledge of facts vitiating the claim will prevent a second recovery by another claimant. (Emphasis added). See Weed v. Equitable Life Assurance Society of U.S., supra. CT Page 9203
The majority rule has been adopted in Connecticut by C.G.S.38a-453(c). "The company issuing the policy shall be discharged of all liability thereunder by payment of the proceeds in accordance with the terms of the policy unless, before such payment, the company has received written notice, from a creditor, executor or administrator of the insured, that the policy was procured or premiums were paid thereon with intent to defraud creditors. That notice may be disregarded by the company unless proper legal proceedings to enforce the claim are begun within three months from the giving of the notice."
In this case, the plaintiff first contacted the defendant regarding the policy some two months after payment, and, then, only to inquire as to the balance on the policy. Another communication from the plaintiff occurred in November 1988, some eight months after the defendant paid on the policy, and, then, only to inform the defendant that Bigley had been appointed executor on the decedent's estate, without asserting a claim on the policy proceeds. It was only in January of 1990 that action was initiated claiming proceeds of the policy was initiated.
The plaintiff appears to base its claim on the fact that the signature of Norma White on the request form to change the beneficiary was a forgery perpetrated by Michael Jurinske, and that the defendant should have been alerted to the same, or at least, conducted an investigation based on suspicious circumstances, which would have uncovered the fraud.
The case of McNabb v. Kentucky Cent. Life Ins. Co., supra is practically a mirror portrayal of the fact situation in the case at bar. In the McNabb case, there was also a forgery requesting a change of beneficiary, filed two days after the insured's death, but dated six days prior to the death, changing the beneficiary from the insured's mother to the insured's father. The court found that the defendant insurance company had no knowledge of the forgery when it paid the proceeds of the policy to the changed beneficiary's assignee and there was no finding of lack of good faith.
In this case, the court is satisfied that Jurinske committed a forgery. In and of itself, however, this factor does not show bad faith unless it is shown that the defendant CT Page 9204 should have been placed on notice before it paid the proceeds to Jurinske, that something was amiss.
In an effort to show compelling suspicious circumstances, the plaintiff has pointed to certain facts;
1. The change of beneficiary form was dated January 8, 1988, one week before White's death, but not received by the defendant until January 21, a week after her death.
2. Jurinske contacted the defendant on February 2, 1988 to inquire whether the change of beneficiary had been effected but neglected to mention that Norma White had died January 15, 1988.
3. It wasn't until February 27, 1988, that Jurinske informed the defendant that Norma White died.
4. When the company requested the original policy, Jurinske told it that the original had been lost and signed a document confirming such loss, failing, however, to have it witnessed as required by company rules.
5. Although the change form named Jurinske as a Trustee and the company requested a copy of the Trust Agreement, Jurinske stated no written agreement existed.
6. Jurinske made numerous calls to the defendant requesting that the claim payment be expedited and that such payment be forwarded by federal express.
The defendant offered testimony through a Joan Gregory, an employee of the defendant, who processed Jurinske's claim. Joan Gregory testified that company policy required that the signature on the form change be compared with White's signature on the original application and such was done. Parenthetically, the court compared the two signatures and must confess that the forgery was an excellent one. No handwriting expert was offered. Joan Gregory further testified that there was nothing unusual for beneficiaries to request lost policy forms when filing death claims. She further testified that she was aware that Jurinske was Norma White's grandson and this lent credibility to the requested form change. It was also testified to by Joan Gregory that the fact that Jurinske called a number of times as to the status of the claim and requested that the proceeds be forwarded by federal express was not unusual for CT Page 9205 beneficiaries who were awaiting receipt of policy proceeds. Finally, Gregory testified that to ensure proper payment she checked with published guidelines in a treatise widely used in the insurance industry when making payments on claims, and the relevant guidelines did not proscribe payment under the circumstances of this case.
The plaintiff loses sight of the fact that the defendant forwarded a notice of the change of beneficiary to Norma White's home on January 25, 1988, ten days after her death, even before the company became aware of her death. The plaintiff labels such notice as perfunctory, but the evidence disclosed that arrangements had been made for mail delivered to the plaintiff's home to be picked up.
The issue in this case is whether the defendant made payment of the policy proceeds in good faith. The burden was on the plaintiff to prove by a fair preponderance of the evidence that such was not the case. Based on all the testimony the court is unable to find that such burden has been sustained.
The issues are found in favor of the defendant and judgment may enter accordingly.
BELINKIE, JUDGE REFEREE