# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

**FILED**

**December 28, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **ERNEST L. ATKINS,** | ) | |
| | ) | |
| Plaintiff/Appellant, | ) | Shelby Circuit No. 79423-4 T.D. |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SECURITY CONNECTICUT** | ) | Appeal No. 02A01-9710-CV-00257 |
| **LIFE INSURANCE CO.,** | ) | |
| | ) | |
| Defendant/Appellee. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE

### THE HONORABLE JAMES E. SWEARENGEN , JUDGE

For the Plaintiff/Appellant:              For the Defendant/Appellee:

Edwin C. Lenow                            S. Russell Headrick
Memphis, Tennessee                        Jennifer Ziegenhorn
                                          Memphis, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

DAVID R. FARMER, J.

HEWITT P. TOMLIN, JR., SR.J.

**OPINION**

This case involves a claim for breach of a life insurance contract. The proceeds of the life insurance policy were distributed while the beneficiary was in prison, and in the lawsuit the beneficiary claimed he did not receive them. The trial court granted summary judgment to the defendant insurance company. We affirm.

On approximately November 11, 1985, Ernest L. Atkins (Father) purchased a $15,000 term life insurance policy from Security-Connecticut Life Insurance Co. (Security). Father named his son, Ernest L. Atkins, ("Atkins") as a contingent beneficiary under the policy. The policy indicated that Father lived at 1569 Shadowlawn, Memphis, Tennessee 38106.

On October 11, 1991, Father died. Security received two claim documents after Father's death. One document was a notice of social security number (Notice), dated December 20, 1991 and executed by "Ernest L. Atkins, 1569 Shadowlawn Boulevard." A Claimant's affidavit was also submitted. This document was likewise executed by "Ernest L. Atkins, 1569 Shadowlawn Boulevard," and notarized and dated January 24, 1992. Security's claims department noticed nothing unusual about these two documents.

After receiving the claim documents, Security notified the claimant, "Ernest L. Atkins, 1569 Shadowlawn Boulevard," by letter that his claim for life insurance benefits had been approved. Security then placed the policy proceeds and interest, $13,627.59, in a personal security account at State Street Bank and Trust Company in Boston, Massachusetts. Two checks were executed on the account in the following amounts:

1.      $9,000.00 to Debra Atkins dated February 19, 1992, and

2.      $4,627.59 to Debra Atkins dated February 20, 1992.

At the time of his Father's death in 1991, Atkins was incarcerated in the Shelby County Correctional Center. After his release in 1994, Atkins applied for food stamps and was rejected because the office records reflected that he had received $13,627.59 in income in 1992. The food stamp office gave Atkins the name of the insurance company and the policy number from the IRS form filed by Security.

Atkins then contacted Security in November 1994, asserting that he did not receive the insurance policy proceeds. Atkins also told Security that he was incarcerated at the time of his father's death. In his affidavit Atkins stated he had no contact with Security during this time. Atkins

1

maintained that he did not authorize anyone to receive the proceeds, and that he did not execute the claim documents used to recover the policy proceeds. Security refused to pay the policy proceeds to Atkins. Atkins then filed this lawsuit.

Security filed a motion for summary judgment, submitting in support of the motion an affidavit from the supervisor of the claims department at Security-Connecticut, Lois Mountzoures. Mountzoures' affidavit recounts the steps taken by Security in delivering the proceeds to the beneficiary. Mountzoures avers that, at the time benefits were paid, the claim documents received appeared to have been properly executed. She asserts that Security was not put on notice of the alleged fraud until after Atkins contacted Security in November 1994 and April 1995. In response, Atkins maintained that there were genuine issues of material fact, since he as the proper beneficiary did not receive the proceeds of the policy.

The trial court granted Security's motion for summary judgment, without elaborating on its reasoning. From this order, Atkins now appeals.

On appeal, Atkins claimed that summary judgment was not appropriate in this case, because there were disputed factual issues in this case, and Security's payment to an imposter did not extinguish the debt owed to him.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. Rule 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). "[T]he issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a factual dispute exists; (2) whether the disputed fact is material to the outcome of the case; and (3) whether the disputed fact creates a genuine issue for trial." *Byrd*, 847 S.W.2d at 214. Even where disputed facts exist, summary judgment is appropriate so long as those facts do not materially bear on the legal elements of the claim or defenses. *Walker v. First State Bank*, 849 S.W.2d 337, 340 (Tenn. App. 1992).

In this case, Atkins asserts that he was the proper beneficiary of the life insurance policy, and that he did not receive the proceeds. Security responds by asserting that there was nothing in the claim documents that would have indicated to Security that the documents were forged or were

otherwise improper. The record contains no evidence from Atkins of anything in the claim documents that might have put Security on notice that the documents were forged or irregular. Atkins' response to Security's summary judgment motion is to reassert that the proceeds must have been paid to an imposter because he did not execute the claim documents and did not receive the proceeds. Thus, the issue in this case is whether an insurance company's payment of proceeds to someone other than the named beneficiary, without evidence of impropriety in the claim documents that would have placed the insurer on notice, is sufficient to support the beneficiary's claim against the insurer for breach of contract.

We found no published Tennessee decisions on this issue. However, courts in other states that have considered this issue have adopted the principle that "an insurer is discharged from all subsequent liability when it makes good faith payments to a purported beneficiary without notice of any competing claims." *Crosby v. Crosby*, 986 F.2d 79, 83 (4th Cir. 1993); *see also Rogers v. Unionmutual Stock Life Ins. Co.*, 782 F.2d 1214 (4th Cir. 1986); *Weed v. Equitable Life Assurance Soc.*, 288 F.2d 463 (5th Cir. 1961); *Harper v. Prudential Ins. Co. of America*, 662 P.2d 1264, 1273 (Kan. 1983). A payment of proceeds to a beneficiary in good faith "without knowledge of facts vitiating the claim will prevent a second recovery by another claimant." *Weed*, 288 F.2d at 464. An insurer is required to investigate a claim when the company is aware of suspicious circumstances. *See In re Estate of Thompson*, 426 N.E.2d 1 (Ill. App. 1981).

In *Estate of Thompson*, the insurance company paid life insurance proceeds to the named beneficiary who later confessed that she had been involved in the insured's murder, thus precluding her from receiving any of the proceeds. *In re Estate of Thompson*, 426 N.E.2d at 2. The insured's estate argued that the insurance company acted in bad faith because the insurance company allegedly acted with notice of facts that would defeat the beneficiary's claim and acted without sufficient investigation. *Id.* In affirming the trial court's granting summary judgment in favor of the insurance company, the court described the standard for a good faith and sufficient investigation:

> We agree that the obligation of good faith might require reasonably prudent pre-payment investigation when an insurer is aware of suspicious circumstances concerning a beneficiary and the death of an insured. However, we conclude that this component of the obligation of good faith is not violated unless [a] reasonably prudent investigation would have uncovered facts which would have defeated the beneficiary's claim.

*Id.* at 3.

3

In this case, the record contains no evidence suggesting that Security had reason to suspect that the claim documents were forgeries. The documents were properly signed and notarized, and the social security numbers and addresses were correct on the forms. Therefore, there is no evidence of suspicious circumstances that would have triggered a duty by Security to investigate further. Thus, the good faith payment to "Ernest L. Atkins" discharged Security's liability to Atkins, and the trial court's grant of summary judgment to Security was appropriate.

The decision of the trial court is affirmed. Costs are assessed against the Appellant, for which execution may issue, if necessary.


_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**


_____
**DAVID R. FARMER, J.**


_____
**HEWITT P. TOMLIN, JR., SR.J.**